1  STEVEN G. KALAR
   Federal Public Defender
2  ROBERT CARLIN
   Assistant Federal Public Defender
3  160 West Santa Clara Street, Suite 575
   San Jose, CA  95113
4  Telephone:  (408) 291-7753
   Email: robert_carlin@fd.org
5
   Counsel for Defendant
6  JESUS SALINAS

7

8
                    IN THE UNITED STATES DISTRICT COURT
9
                 FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
                            SAN JOSE DIVISION
11

12
   UNITED STATES OF AMERICA,            )    No. CR-12-00887 EJD
13                                       )
                       Plaintiff,        )    **DEFENDANT JESUS SALINAS'**
14                                       )    **MOTION RE: "IN LOCO PARENTIS"**
   vs.                                   )    **AND LACK OF CONSENT;**
15                                       )    **PROPOSED JURY INSTRUCTIONS**
                                         )
16 MARIA GUADALUPE VALENZUELA,           )    Date:   June 2, 2014
   PATRICIA DELATORRE,                   )    Time:   3:00 p.m.
17 JESUS SALINAS,                        )
                                         )    Honorable Edward J. Davila
18                    Defendants.        )
                                         )    Jury Selection: August 18, 2014
19 _____ )    Trial Date:     August 19, 2014

20

21

22

23

24

25

26

   SALINAS MOT. RE: "IN LOCO
   PARENTIS" & CONSENT
   No. CR 12-00887 EJD

1

**TABLE OF CONTENTS**

2 Memorandum of Points and Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

3 I.      Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

4 II.     Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

5        A.    The Federal Kidnapping Statute, 18 U.S.C. § 1201, Does Not Apply
To Persons Acting "In Loco Parentis" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

6

7           1.     The Government Bears the Burden to Prove Beyond a Reasonable Doubt that
the Defendants Were Not Acting "In Loco Parentis" . . . . . . . . . . . . . . . . . . 3

8           2.     Assuming Arguendo that a Prima Facie Case is Required, Mr. Salinas Has
Met His Burden of Production By Presenting Evidence That Maria

9                Valenzuela Acted "In Loco Parentis" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

10        B.    The Government is Required to Prove Lack of Consent Beyond A Reasonable
Doubt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

11

       C.    The Jury Must Receive Appropriate Instructions . . . . . . . . . . . . . . . . . . . . . . . . . 13

12

13 III.    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

14

15

16

17

18

19

20

21

22

23

24

25

26

**TABLE OF AUTHORITIES**

**Federal Cases**

Alleyne v. United States, 133 S.Ct. 2151, 2158 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 8

Apprendi v. New Jersey, 530 U.S. 466 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Byrd v. United States, 705 A.2d 629 (D.C. Ct. App. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Chatwin v. United States, 326 U.S. 455 (1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Dillon v. Maryland-National Capital Park and Planning Com'n,
    382 F.Supp.2d 777 (D.Md. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Dillon v. Maryland-National Capital Park and Planning Com'n,
    2006 WL 5157076 (D.Md. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Miller v. United States, 123 F.2d 715 (8th Cir. 1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

United States v. Cortes, __ F.3d __, 2014 WL 998403 (9th Cir. March 17, 2014) . . . . . . . . . . . . . 14

United States v. Floyd, 81 F.3d 1517 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

United States v. Macklin, 671 F.2d 60 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . 3, 12, 13, 14, 15

United States v. Sheek, 990 F.2d 150 (4th Cir. 1993), superceded by 18 U.S.C. § 1201(h) . . . . . . . . 4

United States v. Toledo, 985 F.2d 1462 (10th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**State Cases**

Griego v. Hogan, 71 N.M. 280 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Peters v. Costello, 586 Pa. 102, 115 (Pa. S.Ct. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Spells v. Spells, 250 Pa. Super. 168 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Federal Statutes**

18 U.S.C. § 1201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

1  STEVEN G. KALAR
   Federal Public Defender
2  ROBERT CARLIN
   Assistant Federal Public Defender
3  160 West Santa Clara Street, Suite 575
   San Jose, CA  95113
4  Telephone:  (408) 291-7753
   Email: robert_carlin@fd.org
5
   Counsel for Defendant
6  JESUS SALINAS

7

8

9

10                    IN THE UNITED STATES DISTRICT COURT

11                FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                           SAN JOSE DIVISION

13

   UNITED STATES OF AMERICA,          )   No. CR-12-00887 EJD
14                                     )
                    Plaintiff,         )   **DEFENDANT JESUS SALINAS'**
15                                     )   **MOTION RE:  "IN LOCO PARENTIS"**
   vs.                                 )   **AND LACK OF CONSENT;**
16                                     )   **PROPOSED JURY INSTRUCTIONS**
                                       )
17                                     )
   MARIA GUADALUPE VALENZUELA,         )   Date:   June 2, 2014
18 PATRICIA DELATORRE,                 )   Time:   3:00 p.m.
   JESUS SALINAS,                      )
19                                     )   Honorable Edward J. Davila
                    Defendants.        )
20                                     )   Jury Selection: August 18, 2014
   _____ )   Trial Date:     August 19, 2014
21
   TO:   ASSISTANT UNITED STATES ATTORNEY DANIEL KALEBA AND THE CLERK OF
22         THE ABOVE-ENTITLED COURT

23

24         PLEASE TAKE NOTICE that on June 2, 2014, at 3:00 p.m., in the courtroom of the

25 Honorable Edward J. Davila, defendant Jesus Salinas (hereinafter "Mr. Salinas") will move the

26 Court to require the government to prove beyond a reasonable doubt, as part of its case-in-chief, that

   SALINAS MOT. RE: "IN LOCO
   PARENTIS" & CONSENT
   No. CR 12-00887 EJD                 1

1  the defendants in this conspiracy case, and particularly Maria Guadalupe Valenzuela Castañeda

2  ("Ms. Valenzuela"), were not acting "in loco parentis" (in other words, acting as surrogate parents),

3  vis-a-vis the two minor children.  Additionally, the government must be required to prove lack of

4  consent beyond a reasonable doubt. The jury should also receive appropriate instructions on these

5  issues.

6        This motion is based on the instant Memorandum of Points and Authorities, the Federal

7  Rules of Criminal Procedure, the Constitution of the United States, and on such evidence and

8  argument as will be presented at the hearing.

9  **MEMORANDUM OF POINTS AND AUTHORITIES**

10  **I.**

11  **INTRODUCTION**

12        The defendants in this case are charged with kidnapping and holding hostage two minor

13  children in the border town of Juarez, Mexico.  If convicted, they face a twenty-year mandatory

14  minimum term.  The facts here, however, are quite unlike any "kidnapping" or "hostage-taking" that

15  undersigned counsel has ever seen.   In this case, the children were entrusted into the care of two of

16  the co-defendants, Mr. Salinas and his wife Patricia Delatorre ("Ms. Delatorre"), by Sarani

17  Hernandez ("Ms. Hernandez"), the mother of the children, so that they could be brought from

18  Michoacan, Mexico and across the border from Mexico into the United States.  After a failed

19  attempt to cross the border, the children were then left with the third co-defendant, Ms. Valenzuela,

20  the mother-in-law of Mr. Salinas, again with the consent of their mother, until such time as she could

21  retrieve them or make further arrangements for their travel.

22        The federal kidnapping statute, and the twenty-year mandatory minimum term that applies

23  where minors are kidnapped, do not apply to a "parent."  18 U.S.C. § 1201(a), (g).  Courts that have

24  addressed the issue have held that the term "parent" in this statute also encompasses one who acted

25  "in loco parentis," so that an individual who was acting "in loco parentis" is not subject to

26

SALINAS MOT. RE:  "IN LOCO
PARENTIS" & CONSENT
No. CR 12-00887 EJD         2

1   prosecution under section 1201.  See, e.g., Miller v. United States, 123 F.2d 715 (8th Cir.1941),

2   rev'd on other grounds, 317 U.S. 192 (1942); United States v. Floyd, 81 F.3d 1517, 1523 (10ᵗʰ Cir.

3   1996); Byrd v. United States, 705 A.2d 629, 632 (D.C. Ct. App. 1997).  Accordingly, the

4   government must be required to prove as part of its case-in-chief, and beyond a reasonable doubt,

5   that no defendant in this conspiracy case was acting "in loco parentis."  See Byrd, 705 A.2d at 632.

6   Submission of this issue to the jury is also required under the Sixth Amendment and the Due Process

7   Clause, because any non-"parent" who kidnaps a minor must receive a twenty-year mandatory

8   minimum term, and the determination therefore increases the mandatory minimum sentence.  See

9   Alleyne v. United States, 133 S.Ct. 2151, 2158 (2013) ("Facts that increase the mandatory minimum

10  sentence are therefore elements and must be submitted to the jury and found beyond a reasonable

11  doubt.").

12      Moreover, consent precludes a conviction for kidnapping.  See Chatwin v. United States, 326

13  U.S. 455, 464 (1946).  Thus, the government must also be required to prove lack of consent beyond

14  a reasonable doubt.  See id.; United States v. Macklin, 671 F.2d 60, 64 (2d Cir. 1982).

15      Based on facts that should be undisputed in this case, Ms. Valenzuela was acting with

16  consent, and "in loco parentis," because she took custody of the children with the consent of their

17  mother, and assumed a parental role by providing for their daily needs and attending to their

18  personal, medical, and educational needs.  The government must therefore prove at trial, beyond a

19  reasonable doubt, the absence of consent, and further prove that no defendant in this alleged

20  conspiracy functioned as a surrogate parent, "in loco parentis," vis-a-vis the two minor children.

21  The jury should receive appropriate instructions addressing both issues.

22  //

23  //

24  //

25  //

26

SALINAS MOT. RE:  "IN LOCO
PARENTIS" & CONSENT
No. CR 12-00887 EJD                    3

1

## II.

2

## ARGUMENT

3  **A.   THE FEDERAL KIDNAPPING STATUTE, 18 U.S.C. § 1201, DOES NOT APPLY TO PERSONS ACTING "IN LOCO PARENTIS"**

4

    1.    The Government Bears the Burden to Prove Beyond a Reasonable Doubt That the

5          Defendants Were Not Acting "In Loco Parentis"

6      The federal kidnapping statute criminalizes the conduct of one who "unlawfully seizes,

7  confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or

8  otherwise any person, *except in the case of a minor by the parent thereof*." 18 U.S.C. § 1201(a)

9  (emphasis added). Any non-parent convicted of kidnapping a minor child is subject to a twenty-year

10  mandatory minimum term. 18 U.S.C. § 1201(g).

11      The kidnapping statute does not define the term "parent." See United States v. Floyd, 81

12  F.3d 1517, 1523 (10th Cir. 1996) ("Congress did not define the word 'parent' in section 1201.").[1]

13  Courts that have considered the issue have held that a person who acts as a surrogate parent or

14  guardian, and thus "in loco parentis," falls within the "parent exception," and cannot be convicted of

15  kidnapping. See, e.g., Miller v. United States, 123 F.2d 715, 717 (8th Cir.1941), rev'd on other

16  grounds, 317 U.S. 192 (1942) ("the term 'parent' in a broad sense and under certain circumstances

17  may include anyone who stands in a position equivalent to that of a parent"); Floyd, 81 F.3d at 1523

18  (10th Cir. 1996) ("We agree with the Eighth Circuit that a person who stands in the place of a

19  biological parent at the time of a kidnapping is exempt from prosecution pursuant to section 1201.");

20  Byrd v. United States, 705 A.2d 629, 632 (D.C. Ct. App. 1997) ("we agree with the court in Floyd

21  . . . that 'a person who stands in the place of a biological parent at the time of a kidnapping is exempt

22  ——————————————

23      [1] The only portion of the statute that addresses the term "parent" is subsection (h), which states: "As used in this section, the term 'parent' does not include a person whose parental rights with respect to the victim of an offense under this section have been terminated by a final court

24  order." 18 U.S.C. § 1201(h). That subsection, which is not relevant here, was added in 1994, in response to the Fourth Circuit's holding in United States v. Sheek, 990 F.2d 150 (4th Cir. 1993),

25  superceded by 18 U.S.C. § 1201(h). See 18 U.S.C. § 1201, Historical and Statutory Notes, 1994 Amendments (stating "Subsec. (h). Pub.L. 103-322, § 320924, added subsec. (h)").

26

SALINAS MOT. RE: "IN LOCO
PARENTIS" & CONSENT
No. CR 12-00887 EJD             4

1 │ from prosecution pursuant to [the kidnapping statute]'").

2 │      The Eighth Circuit, in an influential opinion written in 1941, addressed the meaning of the

3 │ term "parent," and the scope of the "parent exception" in the federal kidnapping statute. <u>See</u> <u>Miller</u>

4 │ <u>v. United States</u>, 123 F.2d 715 (8th Cir.1941), <u>rev'd on other grounds</u>, 317 U.S. 192 (1942). As the

5 │ <u>Miller</u> court explained regarding the meaning of the term "parent":

6 │        The term "parent" primarily means one who begets a child. It usually denotes
   │        consanguinity rather than affinity. However, it is also well recognized that the term
7 │        "parent" in a broad sense and under certain circumstances may include anyone who stands
   │        in a position equivalent to that of a parent. . . . A stepfather does not merely by reason of
8 │        such relationship stand in loco parentis to the stepchild. . . . . The assumption of the
   │        relationship is a question of intention.
9 │
   │ <u>Miller</u>, 123 F.2d at 717-18.
10 │
   │      The <u>Miller</u> court identified several factors that may be considered in determining whether the
11 │
   │ defendant acted "in loco parentis," including whether the alleged victim was a member of the
12 │
   │ defendant's household at the time of the charged conduct, whether the defendant had assumed a
13 │
   │ parental relationship, whether the defendant had supported the child financially, and whether he had
14 │
   │ exercised custody or control over the child. <u>See</u> <u>id</u>. at 717. In <u>Miller</u>, the court ultimately found
15 │
   │ that the defendant did not stand in loco parentis in relation to the alleged victim because she had not
16 │
   │ been a member of his household at the time of the event, he had not assumed a parental relationship
17 │
   │ to her, and "[h]e had never supported her and had never presumed to exercise any custody or control
18 │
   │ over her." <u>Id</u>. at 717.
19 │
   │      In <u>United States v. Floyd</u>, the defendant argued that he was exempt from prosecution because
20 │
   │ he had been the step-parent of the child prior to the alleged kidnapping. Both the district court and
21 │
   │ the Tenth Circuit agreed with the defendant that under certain circumstances, an individual who is
22 │
   │ not the biological parent may be considered a "parent" for purposes of the " parent exception" in
23 │
24 │
25 │
26 │

SALINAS MOT. RE: "IN LOCO
PARENTIS" & CONSENT
No. CR 12-00887 EJD                  5

1   section 1201.  See United States v. Floyd, 81 F.3d 1517, 1522-24 & n.2 (10ᵗʰ Cir. 1996).[2]

2        The Tenth Circuit in Floyd reached this conclusion after first noting that the statute does not

3   define the term "parent." Id. at 1523.   The court thus determined that as a matter of statutory

4   interpretation, the term "parent" must be given its "ordinary meaning."  Id.  According to the

5   ordinary meaning of the term, persons who stand in loco parentis are considered "parents."  Id. [3]

6   (citing, inter alia, "Webster's Third New International Dictionary at 1641 (4th ed. 1976) [which]

7   defines 'parent' as 'one that begets or brings forth offspring' and 'a person standing in loco parentis

8   although not a natural parent'"); see also id. at 1524 (citing, inter alia, Griego v. Hogan, 71 N.M.

9   280, 377 P.2d 953, 955–56 (1963) (a person acting in loco parentis "undertakes the care and control

10

11       [2] The district court identified five "incidences" of parenthood, all of which Mr. Salinas
      believes would be satisfied in this case:

12

13       One, that he directly provide a home for the child. Two, that he commit to providing
          directly all the other necessities for the child. Three, that he be himself and personally
          entitled to the services of the child in household chores and the like. Four, that he assume

14       direct responsibility for the training and discipline of the child as he, the stepparent, sees fit
          in the exercise of his reasonable discretion. And five, that he be empowered to select for

15       the child the child's residence, school, church, other institutions of associations and the
          child's personal associations.

16

17   Id. at 1522 n.2 (citing district court's holding).

18       [3] Cf. Peters v. Costello, 586 Pa. 102, 115 (Pa. S.Ct. 2005) (interpreting meaning of undefined
      term "grandparent" in child custody statute to include persons in loco parentis with one of the
      parents of the child, based on common usage):

19

20       [W]e note that the statute does not define the term "grandparent." Notably, the term is not
          qualified by speaking of biological grandparents, or of biological and adoptive grandparents,
          or of biological and adoptive grandparents to the exclusion of others who may claim

21       grandparental status, such as those with an in loco parentis relationship with one of the
          parents of the child. Instead, it simply speaks of grandparents (and great-grandparents). In

22       construing the term, this Court must look to the "common and approved usage" of the term
          "grandparent." 1 Pa.C.S. § 1903(a). Webster's Third New International Dictionary defines

23       "grandparent" as "a parent's parent." Webster's Third New International Dictionary (2002),
          988. The same dictionary defines "parent" as follows: "1a: one that begets or brings forth

24       offspring: Father, Mother; b[law] (1): a lawful parent (2): a person standing in loco parentis
          although not a natural parent...." Id. at 1641.

25

26   Peters v. Costello, 586 Pa. 102, 115 (Pa. S.Ct. 2005).

     SALINAS MOT. RE: "IN LOCO
     PARENTIS" & CONSENT
     No. CR 12-00887 EJD                         6

1    of another in the absence of such supervision by the latter's natural parents and in the absence of

2    formal legal approval") and <u>Spells v. Spells</u>, 250 Pa.Super. 168, 378 A.2d 879, 881–82 (1977) (a

3    person acting in loco parentis "put[s] himself in the situation of a lawful parent by assuming the

4    obligations incident to the parental relationship without going through the formalities of adoption"))

5    (internal quotation marks omitted). However, the Tenth Circuit affirmed the district court's ultimate

6    determination that the defendant in <u>Floyd</u> was not acting in loco parentis at the time of the alleged

7    kidnapping, because he had previously relinquished custody of the child. <u>Id</u>. at 1523-24,

8        Relying on <u>Miller</u> and <u>Floyd</u>, the Court of Appeals for the District of Columbia in <u>Byrd v.</u>

9    <u>United States</u> construed the D.C. kidnapping statute (which is identical to section 1201) and also

10    concluded that the "parent exception" encompasses persons acting "in loco parentis." <u>Byrd v.</u>

11    <u>United States</u>, 705 A.2d 629, 632 (D.C. Ct. App. 1997). The <u>Byrd</u> court then analyzed whether the

12    "in loco parentis" issue should be decided by the judge or the jury. <u>See id</u>. Although the court noted

13    that the Tenth Circuit in <u>Floyd</u> had suggested that the issue was for the court, the <u>Byrd</u> court

14    concluded that because the "parent exception" is contained within the statutory language that sets

15    out the elements of the offense, courts should employ a burden-shifting approach, pursuant to which

16    the defendant must make a prima facie case, after which the issue must be submitted to the jury with

17    proper instructions "as part of the ultimate question of whether the government has proven its case

18    beyond a reasonable doubt":

19       [W]e conclude that once a defendant "bring[s] himself within the [parent] exception,"
         <u>Miller v. United States</u>, 123 F. 2d 715, 718 (8th Cir. 1941), <u>rev'd on other grounds</u>, 317 U.S.
20       192, 63 S.Ct. 187, 87 L.Ed. 179 (1942), by presenting some evidence that he was a
         "parent" within the statutory meaning, the jury must be allowed to decide that issue on
21       proper instructions as part of the ultimate question of whether the government has proven
         its case beyond a reasonable doubt.
22

23    <u>Byrd v. United States</u>, 705 A.2d 629, 632 (D.C. Ct. App. 1997) (construing D.C. kidnapping statute

24

25

26

SALINAS MOT. RE: "IN LOCO
PARENTIS" & CONSENT
No. CR 12-00887 EJD         7

1    that is identical to 18 U.S.C. § 1201, and relying on authorities construing section 1201).[4]

2          Both Floyd and Byrd pre-dated the Supreme Court's watershed decisions in Apprendi v. New

3    Jersey, 530 U.S. 466 (2000) and Alleyne. While the Byrd court relied on principles of statutory

4    construction in reaching its conclusion that the issue must be submitted to the jury, it is now clear

5    that the Sixth Amendment and the Due Process Clause require the same result.

6          In Alleyne, the Supreme Court observed that "[t]he Sixth Amendment provides that those

7    'accused' of a 'crime' have a right to a trial 'by an impartial jury.' This right, in conjunction with

8    the Due Process Clause, requires that each element of a crime be proved to the jury beyond a

9    reasonable doubt." Id. at 2156. The Court went on to discuss "the question of how to define a

10   'crime,'" and found that the "crime" must be defined to include those facts which increase the

11   sentencing floor. See id. 2160-61.

12         Although the Byrd court held that the defendant must make a prima facie case before the

13   issue can be submitted to the jury, it should be noted that the constitutionality of such a requirement

14   is in question after Alleyne. In fact, because the determination of parentage affects the mandatory

15   minimum term, imposing any threshold burden on the defense before the issue is presented to the

16   jury may violate Alleyne, the Sixth Amendment, and the Due Process Clause. In any event, the

17   Court does not need to reach that issue in the present case, because even if it may be constitutionally

18   permissible to require the defense to make a prima facie case, the facts here are more than sufficient

19   to meet such a burden. Accordingly, consistent with Alleyne and Byrd, the issue must be submitted

20   to the jury, and the government must prove beyond a reasonable doubt that no defendant was acting

21   in loco parentis.

22

23         [4] The Byrd court imposed one limitation on the "in loco parentis exception" that does not
24   apply here, holding that because the status is voluntary, a defendant may terminate his own in loco
     parentis status through conduct that places the child at risk of death or serious bodily injury. See
     Byrd, 705 A.2d at 634. Because the defendant in Byrd had attempted to set the children on fire, the
25   court found that the trial court's refusal to submit the issue to the jury was harmless. See id.

26

SALINAS MOT. RE: "IN LOCO
PARENTIS" & CONSENT
No. CR 12-00887 EJD                    8

1

2

      2.        <u>Assuming Arguendo that a Prima Facie Case is Required, Mr. Salinas Has Met His</u>
<u>Burden of Production By Presenting Evidence that Maria Valenzuela Acted "In Loco</u>
<u>Parentis"</u>

3

      In this case, assuming for the sake of argument that the Court may require the defense to

4

make a prima facie case without violating <u>Alleyne</u>, the Sixth Amendment, and the Due Process

5

Clause, the facts are more than sufficient to show that Ms. Valenzuela acted in loco parentis.  In

6

July, 2011, Mr. Salinas and Ms. Delatorre traveled from Washington State to Mexico at the request

7

of the children's mother, and then transported the children from Michoacan to Juarez.  Indictment,

8

¶11.  Mr. Salinas and Ms. Delatorre had been hired by the children's mother to travel to their

9

location in Michoacan and transport them from Michoacan to Washington.  Indictment, ¶¶9, 10.

10

      The only reason that the children had to remain in Juarez after Mr. Salinas and Ms. Delatorre

11

brought them to the border was because border authorities would not allow them to enter the

12

country.  <u>See</u> Supplemental Exhibit B (Desarrollo Integral de la Familia ("DIF") Reports),

13

previously submitted under seal in support of Motion for Grand Jury Transcripts, Docket #63, at 586

14

(Translation of Statement of Maria Guadalupe Valenzuela before the Deputy Attorney General's

15

Office of Legal and Social Assistance of Bravos Judicial District).[5]

16

      Thereafter, Ms. Hernandez consented to the placement of her children with Ms. Valenzuela

17

when they were unable to enter the United States, and essentially abandoned them to her care.  <u>See</u>

18

<u>id</u>. (Translation of Statement of Maria Guadalupe Valenzuela before the Deputy Attorney General's

19

_____

20

21

22

23

24

25

      [5] Supp'l Exh. B at 552:  "MARIA GUADALUPE VALENZUELA CASTANEDA declares the following:  My daughter, Patricia De la Torre, and her husband, Jesus Salinas, went to Michocan on vacation.  Jesus received a call from his brother, whose name I do not know, to ask him to do him the favor of taking his children to Washington because the mother of the children, SARANI HERNANDEZ, lived in that city. My son-in-law had a notarized letter from SARANI authorizing him to take them. My son-in-law was stopped at the bridge because he had some children with him that did not have the same last name as him. My daughter came back and went to Immigration to explain to them that they were only doing a favor and taking the children to their mother. They held them there for about half the day and the immigration agents took the notarized letter away from them. Later on, my daughter and the children came back to my house. My daughter and my son-in-law went to work which is why, the children stayed with me."

26

SALINAS MOT. RE: "IN LOCO
PARENTIS" & CONSENT
No. CR 12-00887 EJD          9

1  Office of Legal and Social Assistance of Bravos Judicial District);[6] see id. at 556 (Translation of

2  Letter of Aidee Arellanes Garcia, Social Services Chief).[7]

3       Throughout the time period charged in the indictment, Maria Guadalupe Valenzuela acted in

4  loco parentis because she kept the children in her household, exercised custody and control over

5  them, supported them financially, and provided their food, clothing, and shelter. See id. at 556

6  (Translation of Statement of Minors before the Deputy Attorney General's Office of Legal and

7  Social Assistance of the Bravos Judicial District)[8]; id. at 596 (Statement of Jesus Fernando Toca

8  Garcia and Anabel Guerra Guerra before the Deputy Attorney General's Office of Legal and Social

9  Assistance of Bravos Judicial District).[9]

10

---

11      [6] Supp'l Exh. B at 552: "Later on, the children's mother called me at my house and asked me
to take care of them for a week, at the most, because she did not work and did not have money to
12  send them. I did ask her to send [money] for their expenses. The days passed and I was asking what
was going to happen with the children. SARANI's brother told me that she was doing all right
13  economically and that she had even bought a car. Time passed and she only sent about $80 each
week, which only happened a few times. Later on, we stopped hearing from her because she changed
14  her phone number. She call once in a while and said that she did not have any money to send the
children. I used the money that she sent to buy them clothes because when the children stayed at my
15  house they only had one change of clothes. One of them did not even have underwear. On several
occasions, I asked Sarani to take the children and she would only tell me that someone would go
16  pick them up soon but never told me who." See also id. at 552 ("She told me if I wanted to I could
turn them over to DlF or the bridge. She never called again until one year later; the children heard. I
17  grew to love them very much.").

18      [7] Supp'l Exh. B at 556: "When the minors were interviewed, they stated that they have lived
with Ms. Maria Guadalupe Valenzuela Castaneda at the [redacted] address in the Francisco Sarabia
19  neighborhood for the past two years because their biological mother named Sarani Hernandez
Ramirez, 34 years of age, abandoned them with her since then and left to the United States. . . .
20  They then stated that their mother called some time ago and said that she did
not want them anymore, that she could keep them or do whatever she wanted with them,
21  which is why they are with her."

22      [8] Supp'l Exh. B at 559-60: "She bought us clothes, tennis shoes and little by little they got
more clothes for us. . . . Maria Guadalupe has taken care of us, we get along well with her family, we
23  call her 'mother,' and we call her children Paty, Brenda and Fernando our siblings."

24      [9] Supp'l Exh. B at 596: "[W]e know and are aware that the children arrived at our neighbors'
house two years ago, and we have knowledge from the children that their mother agreed to return to
25  get them, which she did not do."

26

SALINAS MOT. RE: "IN LOCO
PARENTIS" & CONSENT
No. CR 12-00887 EJD           10

1    In addition, as time passed, she made special arrangements with the director of the local

2  school so that the children could obtain an education.  See id. at 589 (Translation of Letter of

3  Director of Lazaro Cardenas Elementary School, Jose Guadalupe Hernandez)[10]; id. at 556

4  (Translation of Letter of Aidee Arellanes Garcia, Social Services Chief).[11]

5    All of her actions demonstrate her intention to assume parental responsibilities toward the

6  children and reflect her actual exercise of parental duties on a daily basis with respect to the

7  children's personal, medical, and educational needs. See, e.g., id. at 596 (Statement of Jesus

8  Fernando Toca Garcia and Anabel Guerra Guerra before the Deputy Attorney General's Office of

9  Legal and Social Assistance of Bravos Judicial District).[12]

10  //

11  //

12

13

14    [10] Supp'l Exh. B at 589: "Through this channel I inform you that Maria Guadalupe
Valenzuela Castaneda appeared at the beginning of the 2012-13 school year with the children,
[redacted], stating that the children's mother had left them in her care, that it had already been a long
15  time since they had attend school, and that she wanted them to enroll.  She then presented two copies
of their birth certificates and even though this was insufficient, since they had no grades to present,
16  the corresponding steps were followed and they were accepted.  Their teachers have stated that they
would always show up well groomed, with their school supplies and in their uniform."
17  Cf. http://latino.foxnews.com/latino/news/2012/07/18/us-born-living-in-mexico-and-ineligible-for-
basic-services/, Associated Press, published July 18, 2012 (visited April 15, 2014) (discussing
18  bureaucratic paperwork requirements imposed by Mexican government that are precluding U.S.-
born children from registering in school when they reside in Mexico).

19

20    [11] Supp'l Exh. B at 556: "They stated that they are currently attending school and are not
mistreated. They further stated that they have everything they need thanks to the woman who is
21  raising them, since their mother does not send them any money and they currently know nothing
about her."

22

23    [12] Supp'l Exh. B at 596:  "We had the opportunity to see how Maria Valenzuela took care of
them, protected them and gave them everything they needed, for when they arrived at that house,
they were in a poor state of health and hygiene. On several occasions, additionally, we saw them be
24  taken to the doctor immediately, something their mother never did. We are aware that the children
went to school, always well dressed, with clothing Maria and her family gave the children. Edwin
25  and Angel were never hidden away; in fact, they spent time playing with our children."

26

SALINAS MOT. RE: "IN LOCO
PARENTIS" & CONSENT
No. CR 12-00887 EJD                11

**B.      THE GOVERNMENT MUST PROVE LACK OF CONSENT BEYOND A
REASONABLE DOUBT**

"The very nature of the crime of kidnapping requires that the kidnapper use some means of
force–actual or threatened, physical or mental–in each elemental stage of the crime, so that the
victim is taken, held and transported <u>against his or her will</u>."  <u>United States v. Macklin</u>, 671 F.2d 60,
64 (2d Cir. 1982) (emphasis added); <u>Chatwin v. United States</u>, 326 U.S. 455, 464 (1946) ("the
involuntariness of the seizure and detention . . . is the very essence of the crime of kidnapping"); <u>see
also</u> <u>Chatwin</u>, 326 U.S.. at 460 ("The act of holding a kidnapped person for a proscribed purpose
necessarily implies an unlawful physical or mental restraint for an appreciable period against the
person's will and with a willful intent so to confine the victim.").   Accordingly, consent precludes a
conviction for kidnapping.  <u>See</u> <u>United States v. Toledo</u>, 985 F.2d 1462, 1467 (10th Cir. 1993)
(holding that "consent of the victim to accompany the defendant in interstate travel constitutes a
valid defense").[13]

In cases involving minors, the Supreme Court has held that the consent of the minor may be a
complete defense to the kidnapping charge, depending on the minor's age or mental state.  <u>See</u>
<u>Chatwin v. United States</u>, 326 U.S. 455, 460, 464 (1946).  The Supreme Court in <u>Chatwin</u> declined
to set a threshold age at which a minor is capable of giving consent, but held that if the minor "is of
such an age or mental state as to be incapable of having a recognizable will, the confinement then
must be against the will of the parents or legal guardian of the victim."  <u>Id</u>. at 460; <u>Macklin</u>, 671
F.2d at 64 ("the Supreme Court in <u>Chatwin</u> rejected any per se rule of incapacity based on the age of
the victim, at least in cases where the victim is over the age of 10").  In cases where a question is
presented regarding the capacity of the minor to consent, the determination of whether the minor was

---

[13] As Mr. Salinas has outlined in his motion for bill of particulars, consent is also relevant to
the hostage-taking charges because 18 U.S.C. § 1203 requires that the alleged victims were "held or
confined against [their] will."  Ninth Cir. Model Criminal Jury Instr., Instr. 8.120.  Herein, Mr.
Salinas addresses the issue of consent solely in relation to the kidnapping charges, and will submit
proposed instructions tailored to the hostage-taking charge at a later date.

1   incapable of having a "recognized will" "cannot be presumed, but must be proved beyond a

2   reasonable doubt." Macklin, 671 F.2d at 64 n. 5 (citing Chatwin).

3        In Macklin, for example, the Second Circuit reversed the defendant's kidnapping convictions

4   where the minors were aged 11 and 13, and the minors began traveling with the defendant after they

5   ran away from home. See Macklin, 671 F.2d at 61-63. The Second Circuit held that the jury

6   instructions improperly permitted the jury to convict the defendant on the basis of the parents' lack

7   of consent, and further held that the evidence was insufficient to show that the children had been

8   held against their will because "both children were free to come and go as they pleased, to speak to

9   other people, and to leave appellant at any time they wished." Id. at 65, 66;

10       Consistent with these authorities, the Eighth Circuit has incorporated the requirement of lack

11  of consent into the first element of its model jury instructions. See Eighth Cir. Model Criminal Jury

12  Instr. 6.18.1201 (2013) ("The crime of kidnapping, as charged in [Count____of] the Indictment, has

13  four elements, which are: One, the defendant, (insert name), unlawfully [seized] [confined] [kept]

14  [detained] (insert name of person described in the indictment) without [his] [her] consent");[14] see

15  also id., Committee Comment, at 291-92 (discussing government's burden to disprove consent in

16  cases involving minors, and noting "question of when a child can be deemed to have a legally

17  recognizable will").

18       In this brief, Mr. Salinas will not attempt to resolve the remaining question of whether

19  consent must be assessed in this case from the perspective of either the parent or the child. In fact,

20  given the unique circumstances of this case, it may be that the consent of both the parent and the

21  children will be relevant at different periods of time. In any event, that question will require further

22  briefing, and may require factual development. At this stage, Mr. Salinas believes it is sufficient for

23  present purposes for the Court to conclude, consistent with Chatwin, that lack of consent is a factor

24

25       [14] Available online at http://www.juryinstructions.ca8.uscourts.gov/crim_manual_2013.pdf, at 290-91.

26

SALINAS MOT. RE: "IN LOCO
PARENTIS" & CONSENT
No. CR 12-00887 EJD              13

1  that must be proved by the government beyond a reasonable doubt.

2  **C.  THE JURY MUST RECEIVE APPROPRIATE INSTRUCTIONS**

3  In this case, the jury must receive appropriate instructions addressing the government's

4  burdens to prove lack of consent beyond a reasonable doubt, and to prove that Ms. Valenzuela was

5  not acting "in loco parentis."  See Chatwin, 326 U.S. at 464; Byrd, 705 A.2d 632; Alleyne, 133 S.Ct.

6  at 2159-60.  Given the facts and circumstances, failure to give properly tailored instructions would

7  constitute reversible error.  See Macklin, 671 F.2d at 65 ("The instructions to the jury in this case

8  were thus directly contrary to the federal law of kidnapping as interpreted by the Supreme Court in

9  Chatwin."); cf. United States v. Cortes, __ F.3d __, 2014 WL 998403, at *4, *7-*8 (9th Cir. March

10  17, 2014) (reversing conviction for failure to give sentencing entrapment instruction where

11  defendant's requested instruction had some foundation in evidence and drug quantity affected

12  mandatory minimum term).

13  Mr. Salinas proposes that the following underlined language be incorporated into the pattern

14  kidnapping jury instruction addressing consent and "in loco parentis," and also proposes a

15  companion special instruction defining "in loco parentis":

16  **KIDNAPPING - ELEMENTS - 18 U.S.C. § 1201**

17  The defendants are charged in Count 1 of the indictment with kidnapping in violation of
    Section 1201(a)(1) of Title 18 of the United States Code.  In order for any defendant to
18  be found guilty of that charge, the government must prove each of the following
    elements beyond a reasonable doubt:

19
    First, no defendant was acting as a parent, or "in loco parentis," to [*names of children*];
20
    Second, the defendants unlawfully [kidnapped, seized, confined] [*names of children*]
21  without their consent, and in the case of a minor who was incapable of consenting,
    without the consent of their biological parent or legal guardian;[15]

22

23

24  [15] At this stage, Mr. Salinas's proposed instruction provisionally imposes the burden on the
    government to disprove consent as to both parent and child.  However, as indicated earlier, this
    aspect of the proposed instruction may be subject to modification as a result of additional briefing
25  and development of the record.  An instruction defining "consent" may also be necessary.

26

SALINAS MOT. RE: "IN LOCO
PARENTIS" & CONSENT
No. CR 12-00887 EJD                    14

1     Third, the defendants held [*names of children*] for ransom, reward, or other benefit; and

2     Fourth, [*jurisdictional element - to be determined by Court*].

3 Authority:  18 U.S.C. § 1201(a)(1); Ninth Cir. Model Criminal Jury Instr. 8.114 (modified);

4 Eighth Cir. Model Criminal Jury Instr. 6.18.1201 (modified); <u>Alleyne</u>, 133 S.Ct. at 2158; <u>Floyd</u>,

5 81 F.3d at 1522-24 & n.2;  <u>Byrd</u>, 705 A.2d at 632; <u>Chatwin</u>, 326 U.S. at 464; <u>Macklin</u>, 671 F.2d

6 at 64-65.

7     Additionally, the defense requests that the jury receive an appropriate instruction

8 defining "in loco parentis," such as:

9 **"IN LOCO PARENTIS" - DEFINED**

10 A person "acts as a parent" within the meaning of the federal kidnapping statute when he or she acts "in loco parentis" or in the place of the parent.  A person who acts in the place of the parent assumes responsibility for a child, and functions as the parent of that child, such as by providing food, clothing, and shelter, and arranging for schooling. Factors that you may consider in determining whether a person acts "in loco parentis," include, for example, whether the child was a member of the person's household at the time of the charged conduct, whether the person assumed a parental relationship, whether the person supported the child financially, whether he or she exercised custody or control over the child, and whether the biological parent consented to the arrangement.

Persons who are in loco parentis include those with day-to-day responsibilities to care for and financially support a child. A biological or legal relationship is not necessary.

The term in loco parentis according to its generally accepted common law meaning, refers to a person who has put himself in the situation of a lawful parent by assuming obligations incident to the parental relation without going through the formalities necessary to legal adoption. It embodies the two ideas of assuming parental status and discharging parental duties. The phrase in loco parentis is defined as in the place of the parent, charged with the parent[']s rights, duties and responsibilities. The key in determining whether the relationship of in loco parentis is established is found in the intention of the person allegedly in loco parentis to assume the status of a parent toward a child.

The intent to assume such parental status can be inferred from the acts of the parties. Other factors which are considered in determining whether in loco parentis status has been assumed are (1) the age of the child; (2) the degree to which the child is dependent on the person claiming to be standing in loco parentis; (3) the amount of support, if any provided; and (4) the extent to which duties commonly associated with parenthood are exercised.

1   The government is required to prove beyond a reasonable doubt that none of the defendants charged in this case were acting in the place of the parent,"in loco parentis,"
2   in relation to [*names of children*].

3   Authority:  Miller, 123 F.2d at 717-18; Byrd, 705 A.2d at 632; Dillon v. Maryland-National

4   Capital Park and Planning Com'n., 2006 WL 5157076, *7 (D.Md. 2006).

5   Outside the context of the kidnapping statute, one district court addressed the meaning

6   of the term "in loco parentis" in a case involving the Family and Medical Leave Act.  See

7   Dillon v. Maryland-National Capital Park and Planning Com'n, 382 F.Supp.2d 777, 786-87

8   (D.Md. 2005).  In Dillon, the court explained that:

9
    "The term 'in loco parentis,' according to its generally accepted common law meaning,
10  refers to a person who has put himself in the situation of a lawful parent by assuming the
    obligations incident to the parental relation without going through the formalities
11  necessary to legal adoption. It embodies the two ideas of assuming the parental status
    and discharging the parental duties." Niewiadomski v. United States, 159 F.2d 683, 686
12  (6th Cir. 1947). Black's Law Dictionary defines the phrase "in loco parentis" as "[i]n the
    place of a parent; instead of a parent; charged, factitiously, with a parent's rights, duties,
13  and responsibilities." Black's Law Dictionary 787 (6th ed. 1990).

14  Dillon, 382 F.Supp.2d at 786-87.   The Dillon court thereafter crafted a jury instruction defining

15  "in loco parentis" which is substantially identical to the second, third, and fourth paragraphs of

16  Mr. Salinas' proposed instruction above.  See Dillon v. Maryland-National Capital Park and

17  Planning Com'n, 2006 WL 5157076, *7 (D.Md. 2006) ("In Loco Parentis" Instruction).

18  Accordingly, as outlined above, the government must be required to prove lack of

19  consent beyond a reasonable doubt, and must also prove beyond a reasonable doubt that none of

20  the defendants in this conspiracy case were acting "in loco parentis," and the jury must be

21  instructed accordingly.

22  ///

23  ///

24  ///

25  ///

26
    SALINAS MOT. RE:  "IN LOCO
    PARENTIS" & CONSENT
    No. CR 12-00887 EJD                    16

**III.**

**CONCLUSION**

For the reasons set forth herein, the government must be required to prove lack of consent beyond a reasonable doubt, and to prove beyond a reasonable doubt that none of the defendants were acting "in loco parentis." The jury must also be instructed accordingly. Mr. Salinas reserves the right to submit additional proposed instructions, including regarding consent, at a later date.

Dated: April 18, 2014                                  Respectfully submitted,

                                                        STEVEN G. KALAR
                                                        Federal Public Defender


                                                        _____/s/_____
                                                        ROBERT CARLIN
                                                        Assistant Federal Public Defender

SALINAS MOT. RE: "IN LOCO
PARENTIS" & CONSENT
No. CR 12-00887 EJD                    17