1 | STEVEN G. KALAR
Federal Public Defender
2 | ROBERT CARLIN
Assistant Federal Public Defender
3 | 160 West Santa Clara Street, Suite 575
San Jose, CA  95113
4 | Telephone:  (408) 291-7753
Email: robert_carlin@fd.org
5 |
Counsel for Defendant
6 | JESUS SALINAS

7 | IN THE UNITED STATES DISTRICT COURT

8 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

9 | SAN JOSE DIVISION

10 |

11 | UNITED STATES OF AMERICA,                )   No. CR-12-00887 EJD
                                         )
12 |                           Plaintiff,    )   **DEFENDANT SALINAS' (1) MOTION**
                                         )   **TO PRECLUDE PROSECUTION BASED**
13 |                                         )   **ON THEORY AND FACTS NOT ALLEGED**
     vs.                                   )   **IN INDICTMENT; (2) MOTION TO**
                                         )   **DISMISS INDICTMENT ON GROUNDS OF**
14 |                                         )   **ABANDONMENT AND FAILURE TO**
                                         )   **STATE AN OFFENSE**
15 | MARIA GUADALUPE VALENZUELA,           )
     PATRICIA DELATORRE,                   )   Honorable Edward J. Davila
16 | JESUS SALINAS,                         )
                                         )   Date:   July 7, 2014
17 |                           Defendants.   )   Time:  3:00 p..m.
                                         )
18 | _____ )   Jury Selection:      August 18, 2014
                                         )   Trial Date:          August 19, 2014
19 |

**NOTICE OF MOTION**

20 |
TO:    ASSISTANT UNITED STATES ATTORNEY DANIEL KALEBA AND THE CLERK OF
21 |        THE ABOVE-ENTITLED COURT

22 |        PLEASE TAKE NOTICE that on July 7, 2014, at 3:00 p.m., or as soon thereafter as the

23 | matter may be heard, in the courtroom of the Honorable Edward J. Davila, defendant Jesus Salinas

24 | ("Mr. Salinas") will move the Court to preclude the government from relying on theories of

25 | prosecution and supporting facts that were not presented to the grand jury and are not set forth in the

26 |

SALINAS MOT. TO PRECLUDE
UNCHARGED THEORY; DISM.
INDICTMENT
No. CR 12-00887 EJD

Indictment.  Additionally, Mr. Salinas moves to dismiss the indictment because the government has abandoned the theory of prosecution set forth in the Indictment, and on grounds that the Indictment fails to state an offense under Fed. R. Crim. P. 12(b)(3)(B).

This motion is based on the instant Memorandum of Points and Authorities, the Federal Rules of Criminal Procedure, the Fifth Amendment, the Constitution of the United States, and on such evidence and argument as will be presented at the hearing.

**I.**

**INTRODUCTION**

Only three months before trial, the government has developed two new, mutually inconsistent theories of prosecution based on new factual allegations, with newly named individuals who may or may not play central roles (depending on which version of the theory the government decides to adopt), despite the fact that none of this was either presented to the grand jury, or set forth in the Indictment.  The new theories are predicated on a series of financial transactions involving a purportedly "usurious loan" made to Sarani Hernandez by two individuals who are not named in the Indictment, Graciela Albor Martinez, and Maria Martinez Ramirez.  See Gov. Opp. to Rule 15 Depositions at 4.   In addition, these new theories of criminal liability appear intended to shift the time frame of the alleged criminal conduct to a starting date in July 2011, rather than the starting date of June 2011, that was alleged in the Indictment, although the government more recently backtracked on that point after Mr. Salinas identified the timing issue.  See Gov. Opp. to Bill of Particulars at 5.

The government's new theories of prosecution, and outlines of some of its inconsistent supporting factual allegations, are set forth in two opposition briefs that the government recently filed.   See Gov. Opp. to Rule 15 Depositions, Docket #82, at 4-5; Gov. Opp. to Mot. for Bill of Particulars at 2-7, Docket #87.  For the Court's convenience, copies of these documents will be submitted herewith, along with a copy of the Indictment setting forth the government's original, now-abandoned theory.

1

2      The government's new theories of prosecution would require impermissible constructive

3   amendment of the Indictment, in violation of the Fifth Amendment.  The government's efforts to

4   shift (1) the time frame of the alleged conspiracy; (2) its legal basis; (3) its factual predicate; and (4)

5   the identities of the individuals involved, must be rejected as violative of the Fifth Amendment's

6   requirement of grand jury indictment, because no aspect of these new theories has been subjected to

7   any probable cause determination by a grand jury, and the admission of the supporting evidence at

8   trial would require reversal.  See United States v. Adamson, 291 F.3d 606, 615 (9th Cir. 2002).

9      Accordingly, pursuant to Mr. Salinas' Fifth Amendment to be tried solely on charges that

10   have been returned by a grand jury, the Court must preclude the government from proceeding on a

11   theory or theories of prosecution that were neither presented to the grand jury nor set forth in the

12   Indictment, and must preclude the government from offering evidence regarding loan negotiations,

13   loan transactions, loan repayments, and interest payments, involving conduct and individuals who

14   were not identified in the Indictment.   The Court should also dismiss the Indictment on grounds of

15   implied abandonment by the government, and failure to state an offense.

16                                                      **II.**

17                                              **ARGUMENT**

18   **A.      The Government Must Not Be Permitted to Rely on New Theories of Prosecution That
             Have Not Been Presented to the Grand Jury**

19

20      The Fifth Amendment to the United States Constitution requires that "no person shall be held

21   to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a

     Grand Jury."   U.S. Const. Amend. V.   As the Supreme Court has explained, "a court cannot permit
22
     a defendant to be tried on charges that are not made in the indictment against him."  United States  v.
23
     Stirone, 361 U.S. 212, 217 (1960).  Pursuant to the Fifth Amendment, a defendant has a "right to
24
     have the grand jury make the charge on its own judgment."  Id. at 218–19.  A defendant's
25
     entitlement to be charged by the grand jury in an indictment also serves additional purposes,
26

     SALINAS MOT. TO PRECLUDE
     UNCHARGED THEORY; DISM.
     INDICTMENT
     No. CR 12-00887 EJD

1   including (1) requiring the prosecutor to establish probable cause to the satisfaction of a group of

2   unbiased men and women, (2) enabling the accused to prepare a defense by giving notice of the

3   precise conduct alleged, and (3) protecting against another prosecution for the same offense.  See

4   Gaither v. United States, 413 F.2d 1061, 1066 (D.C.Cir. 1969).

5          Constructive amendment of an indictment at trial is reversible error, and occurs where "(1)

6   there is a complex of facts presented at trial distinctly different from those set forth in the charging

7   instrument, or (2) the crime charged in the indictment was substantially altered at trial, so that it was

8   impossible to know whether the grand jury would have indicted for the crime actually proved."

9   United States v. Adamson, 291 F.3d 606, 615 (9th Cir. 2002) (internal brackets and quotation marks

10  omitted).

11         Here, both grounds for constructive amendment identified in Adamson would occur at trial,

12  because the government now intends to present a complex of facts at trial that are distinctly different

13  from those in the Indictment, and because the government's theory or theories of the crime will be

14  substantially altered at trial, so that it will be impossible to know whether the grand jury would have

15  indicted for whatever criminal theory on which the petite jury might convict.  See id.  This concern

16  has arisen because the government, in recent briefing in this Court and in Magistrate Court in

17  response to defense motions, has indicated its intent to proceed on a theory of prosecution that is

18  significantly different from that set forth in the Indictment.  See Gov. Opp. to Def. Mot. for Foreign

19  Depositions, Docket #82, at 3-4; Gov. Opp. to Bill of Particulars, Docket #87, at 2-9.  The

20  government's briefing makes clear that the government's view of certain facts, as well as its entire

21  theory of criminal liability, has changed significantly from the facts and theories set forth in the

22  Indictment, to the point that the government now intends to base its theory of criminal liability on

23  certain financial transactions and the actions of third parties that are not even mentioned in the

24  Indictment.

25         However, "the Government cannot usurp the role of the grand jury by advancing new,

26  unalleged theories . . .  in its briefs in an effort to save the Indictments."  United States v. Alkaabi,

1   223 F.Supp.2d 583, 589 (D.N.J. 2002) (citing United States v. Henry, 29 F.3d 112, 114 (3d Cir.

2   1994) (rejecting property theories that were not alleged in Indictment for mail fraud) and United

3   States v. Zauber, 857 F.2d 137, 1434 (3d Cir. 1988) (rejecting "goodwill" theory of property that

4   was not alleged in Indictments for mail and wire fraud)).   Accordingly, this Court must preclude the

5   government from proceeding on any uncharged theory of criminal liability, and any supporting facts

6   that were not presented to the grand jury.

7          With respect to the facts, the government now appears to agree with the defense that certain

8   allegations in the Indictment were either misleading, incorrect, or failed to support the charged

9   offenses.  For example, the government now concedes that after Ms. Hernandez asked Mr. Salinas

10  and Ms. Delatorre to transport the children to the U.S., and they attempted to do so, but were stopped

11  at the border.  See Gov. Opp. to Def. Mot. for Foreign Depositions, Docket #82, at 3-4.  The

12  government still contends that Ms. Hernandez did not thereafter consent to the placement of the

13  children with Ms. Valenzuela, but appears to recognize that there is significant evidence to the

14  contrary.

15         As outlined in Mr. Salinas' pending Motion for Bill of Particulars, the Indictment returned by

16  the grand jury is predicated on a completely different legal and factual theory.   See United States v.

17  Valenzuela et al., No. CR 12-00887 EJD, Docket #64; Def. Mot for Bill of Particulars.  First, the

18  Indictment alleges that the criminal conspiracy began in June 2011 when Mr. Salinas and Ms.

19  Delatorre retrieved the children in Michoacan.  See Indictment ¶¶6, 28.  This is factually impossible,

20  however, because Ms. Hernandez had given money to Mr. Salinas and Ms. Delatorre to get the

21  children in Michoacan and try to bring them across the border.

22         Second, the Indictment alleges that the charged kidnapping and hostage-taking offenses were

23  carried out through ongoing demands by the defendants for money from Ms. Hernandez (which Mr.

24  Salinas will refer to as "Theory #1").  See Indictment at 3-4.  But the defense has agreed that as a

25  factual matter, one or more of the defendants did make requests money from Ms. Hernandez for the

26  upkeep of the children, although it was not for any criminal purpose.   Thus, while the Indictment

SALINAS MOT. TO PRECLUDE
UNCHARGED THEORY; DISM.
INDICTMENT
No. CR 12-00887 EJD                                      3

1    was predicated on a theory of criminal liability arising from requests for money, this hardly

2    demonstrates the existence of a criminal conspiracy when the money was intended for the upkeep of

3    minors who the defense contends had been abandoned by their mother.

4          By contrast, the government's new theory of prosecution is predicated on a "usurious loan"

5    that Sarani Hernandez purportedly agreed to pay in July, 2011, <u>after</u> the children were not able to

6    cross the border.  Gov. Opp. to Rule 15 Depositions at 4-5.  The government's new theory is that

7    Ms. Hernandez was "extorted" through "interest payments" that Ms. Hernandez made on this

8    allegedly "usurious loan."  <u>See</u> <u>id</u>. at 3-4.   But it is fatal to the government's new theory that the

9    Indictment never mentions any allegedly usurious loan, nor does it name any individuals allegedly

10   involved in brokering or extending this loan.

11         Moreover, although trial is presently only three months away, the government has not even

12   settled on a response to the essential questions of who brokered this loan, who set the interest rate,

13   and who received the payments.  On these issues, the government has advanced two competing

14   theories.

15         The new theory (which Mr. Salinas will refer to as "Theory #2") set forth in the

16   government's opposition to the Rule 15 depositions alleged that Mr. Salinas told Ms. Hernandez that

17   he needed more money for the border crossing, allegedly without telling her that they had tried and

18   failed to cross the border.[1]  The government then states: "His aunt was only too happy to help out a

19   person in need, and his aunt would 'loan' the mother the sum of $2,500 at the reasonable interest

20   payment of $375 per month, or an annual interest rate of 180%."  Gov. Opp. to Rule 15 Depositions

21   at 4:7-9.  The government goes on to say that documentation regarding this loan is found in records

22   obtained from Mr. Salinas' aunt, Graciela Albor Martinez, and her mother, Maria Martinez Ramirez,

23   who the government describes as the "conduit for the transaction."  <u>Id</u>. at 4:12-15.

24   _____

25        [1] As the Court may recognize from earlier briefing, Ms. Hernandez has a poor track record for honesty and full disclosure, so any assertion she has made must be taken with a large grain of salt.

26

SALINAS MOT. TO PRECLUDE
UNCHARGED THEORY; DISM.
INDICTMENT
No. CR 12-00887 EJD                                    4

1

2      In response to Theory #2, Mr. Salinas pointed out in his written reply that the government's

3   summary offered nary a hint regarding how it might try to prove Mr. Salinas' involvement, if at all,

4   in the "usurious loan."  See Salinas Reply Re: Rule 15 Depositions, Docket #84, at 12.  Mr. Salinas

5   also noted that neither Ms. Albor nor Ms. Ramirez, the alleged "conduit," were charged in the

6   Indictment.   Id.  Moreover, the government did not even contend in its factual summary that any

7   charged defendant had a role in either arranging the loan, in accepting payments, or in

8   communicating with Ms. Hernandez about the balance due on the loan.  Id.  For example, the

9   government's vague summary stated that after Ms. Hernandez thought she had repaid the loan by

10   making payments to an unidentified person, she was told by an unidentified  person that her

11   payments had only covered the interest.  See Gov. Opp. to Rule 15 Depositions at 5 ("In April, 2012,

12   after she thought she had repaid the usurious loan, she was told that the $375 only covered the

13   interest payments, and the principle remained unpaid.").  Who made these statements, and who

14   received the payments?

15      After Mr. Salinas identified these deficiencies, the government invented yet a third version of

16   events, "Theory #3," which it has now presented in its opposition to a bill of particulars.   In

17   response to Mr. Salinas' criticisms of the government's theory in the Rule 15 opposition, the

18   government modified its factual allegation regarding who extended the alleged usurious loan to state

19   that "The codefendants arranged for a loan, in the amount of $2,500, funded by Salinas' aunt, to pay

20   for the children's crossing.  The interest rate on this "loan" was $375 per month, an annual rate of

21   180 percent."   Gov. Opp. to Bill of Particulars at 4:16-18.  Thus, in contrast to Theory #2, in which

22   the aunt arranged the loan, according to Theory #3 the defendants arranged the loan.  Compare Gov.

23   Opp. to Rule 15 Depositions at 4:7-9 (loan arranged by "aunt") with Gov. Opp. to Bill of Particulars

24   at 4:16-18 (loan arranged by "codefendants").  But even under Theory #3, the government does not

25

26

SALINAS MOT. TO PRECLUDE
UNCHARGED THEORY; DISM.
INDICTMENT
No. CR 12-00887 EJD                                    5

1   say which of the codefendants allegedly participated in arranging this loan.[2]

2        Mr. Salinas is now left with central questions raised by the government's late-breaking and

3   multiple changes in theory, including:   Who communicated with Ms. Hernandez about this loan?  Is

4   the allegedly usurious loan relevant to the kidnapping charge, or the hostage-taking charge, or both?

5   Does the government believe that these two women were co-conspirators with Mr. Salinas, Ms.

6   Delatorre, and/or Ms. Valenzuela?  Does the government believe that these women were carrying

7   out a different conspiracy that somehow indirectly benefitted Mr. Salinas?  The government's

8   factual summary does not say.  Does the government believe that Mr. Salinas had knowledge of the

9   "usurious loan"? If so, what is the proof?  The government now flatly that "the codefendants"

10  (presumably including Mr. Salinas) must have had some role in the loan, because the women are

11  related to him, but the government surely realizes that these women are also related to Sarani

12  Hernandez, so the mere familial relationship means nothing.

13       The government's late-breaking shift in theories opens significant new avenues of

14  investigation and litigation only three months before trial, after this case has been pending for more

15  than a year.

16       The requirement of grand jury indictment serves an important notice function for a

17  defendant.  The government should not be permitted to pursue these alternate, inconsistent theories

18  at trial, or any evidence related to them, unless the government returns to the grand jury and obtains

19  _____

20       [2] The government relies on this new allegation regarding extension of a usurious loan to
     amend a significant factual allegation in the Indictment – namely, the start date of Mr. Salinas'
21   participation in the alleged conspiracy, stating  "no later than the time of the July 7, 2011 loan,
     Salinas was a member of this conspiracy." Id. at 5.   However, the government has not stated that
     Mr. Salinas himself was involved in the loan in any way.
22       The government also alleges in the alternative that "sufficient facts exist in the record
     supporting a much earlier date" for Mr. Salinas' participation in the alleged conspiracy.  Id.  But
23   what are those facts?   In yet another amendment to the Indictment, the government now  contends
     that while Mr. Salinas tried and failed to cross the children, the attempted crossing was not done "in
24   good faith" because, according to the government, they declined to participate in secondary
     inspection.  Gov. Opp. to Bill of Particulars at 5:9-12.  Is this amendment to the Indictment the
25   government's sole support for its argument that the conspiracy started in June 2011, or are there
     other facts that Mr. Salinas must be prepared to meet at trial?

26

1   an Indictment predicated on these theories.  The Indictment must set forth the pertinent facts in

2   sufficient detail that Mr. Salinas may be adequately apprised of the charges against him, and will

3   understand the factual allegations that he needs to investigate. And Mr. Salinas must have sufficient

4   time to conduct necessary investigation and preparation regarding the new theories and factual

5   allegations.

6          As Mr. Salinas argued in the motion for bill of particulars, the Indictment reflects a

7   fundamental lack of understanding of the facts in this case, owing perhaps to the government's

8   fundamental bias in favor of Ms. Hernandez's view of the facts.  The defense understands why the

9   government may wish to shore up its case, given the myriad deficiencies identified by the defense in

10  its pending motions.  But the government's effort to proceed without first obtaining a new

11  Indictment must be must be rejected as violative of the Fifth Amendment, because no aspect of this

12  new theory has been subjected to any probable cause determination by a grand jury, and admission

13  of the supporting evidence at trial would require reversal.  Adamson, 291 F.3d at 615.

14         The government's attempts to modify (1) its theory of prosecution, (2) the time frame of the

15  alleged criminal conduct, (3)  the predicate acts supporting the alleged crime, and (4) the identities

16  of the individuals involved, are even more pronounced here than in numerous cases in which

17  constructive amendment was found to require reversal.  For example, in United v. Choy, 309 F.3d

18  602, 607 (9th Cir. 2002), the Ninth Circuit reversed the defendant's bribery conviction due to

19  constructive amendment based on a shift in the government's theory, where the "grand jury indicted

20  Choy for giving 'a thing of value (to wit, $5,000)' to a public official [but] Choy was convicted . . .

21  on the theory that giving the $5,000 to a private individual indirectly conferred value—the

22  opportunity to receive bribes in the future."  Thus, the mere shift in emphasis from an indirect

23  benefit to a direct benefit was sufficient to constitute constructive amendment.  Similarly, in Jeffers

24  v. United States, 392 F.2d 749, 751–52 (9th Cir. 1968), the Ninth Circuit found an impermissible

25  variance where the indictment charged that donations to a religious group were used for

26  non-religious purposes, but the evidence showed only that the money was used in a manner contrary

1    to representations made at the time of collection.  The government's intended shift in theory and

2    facts here is far more egregious than the circumstances that required reversal in <u>Choy</u> and <u>Jeffers</u>.

3         The government's attempt to shift the focus of its case to different behavior carried out by

4    different individuals who were not named in the indictment is also more glaring than in prior cases

5    requiring reversal.  For example, in <u>Howard v. Dagget</u>, 526 F.2d 1388, 1390 (9th Cir. 1975), the

6    Ninth Circuit reversed a conviction for travel in aid of prostitution due to constructive amendment of

7    indictment where the district court admitted evidence regarding alleged prostitutes who were not

8    named in the indictment, because the reference to additional individuals "allow[ed] the jury to

9    convict of a charge not brought by the grand jury."

10        The government's approach, if permitted, would violate all the purposes that a grand jury

11   indictment is designed to serve:   first, this theory was not presented to a group of unbiased men and

12   women; second, the absence of this theory in the indictment has limited Mr. Salinas' ability to

13   investigate and prepare to meet the new theory at trial; and third, the failure of the indictment to

14   outline this theory means that he could be prosecuted in the future on a wire fraud or usurious loan

15   charge even if acquitted in this case, and could even be prosecuted on a kidnapping and hostage-

16   taking charge predicated on a different theory of liability, in violation of Mr. Salinas' right not to be

17   placed twice in jeopardy.  <u>See</u> <u>Gaither</u>, 413 F.2d at 1066.

18        Moreover, as outlined in Mr. Salinas' separately filed status update to the Court, the

19   government's reliance on this late-breaking new theory has in turn resulted the recent disclosure of

20   voluminous additional materials.  Indeed, the government's factual summaries identify some

21   allegations that are apparently drawn from this new discovery.   The new discovery, which includes

22   phone records, bank records, witness statements, call transcripts, and numerous other types of

23   documents, will take time to review, and the limited review that the defense has conducted thus far

24   has already revealed significant new paths for investigation.  Mr. Salinas has not had sufficient

25   notice or time to review any of this material.  If the allegations about the usurious loan, and the

26

participants to that transaction, had been set forth in the Indictment, then Mr. Salinas would have been on notice, and would have received corresponding discovery over a year ago.

Mr. Salinas has been concerned throughout this case regarding the risk of trial by ambush, given the significant disconnect between the gravity of the charges and the limited facts known to Mr. Salinas.  See United States v. Valenzuela et al., No. CR 12-00887 EJD, Docket #64,  Def. Mot for Bill of Particulars, at 2.  It appears that Mr. Salinas' concern was well-founded.   The Fifth Amendment's requirement of grand jury indictment is one of the many protective measures set forth in the Constitution to prevent precisely this sort of gamesmanship and oppressive conduct by the government, and the Court should not permit it.

**B.      The Indictment Should be Dismissed on Grounds of Abandonment and Failure to State an Offense**

The Sixth Amendment requires that a defendant "be informed of the nature and cause of the accusation."  U.S. Const. amend. VI.   Pursuant to the Federal Rules of Criminal Procedure, an indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged."  Fed.R.Crim.P. 7(c)(1).

A defendant may make a pre-trial motion to dismiss the indictment on grounds that it fails to charge an offense.  Fed.R.Crim.P. 12(b)(2), 12(b)(3)(B).  If an issue raised in a pretrial motion is entirely segregable from the evidence to be presented at trial, the motion must be decided before trial.  See United States v. Shortt Accountancy Corp., 785 F.2d 1448, 1452 (9th Cir. 1986).

An indictment is sufficient to withstand a motion to dismiss if it contains the elements of the charged offense in sufficient detail (1) to enable the defendant to prepare his defense; (2) to ensure him that he is being prosecuted on the basis of facts presented to the grand jury; (3) to enable him to plead double jeopardy; and (4) to inform the court of the alleged facts so that it can determine the sufficiency of the charge.   United States v. Bernhardt, 840 F.2d 1441, 1445 (9th Cir. 1988); see also Russell v. United States, 369 U.S. 749, 768-71 (1962).

SALINAS MOT. TO PRECLUDE
UNCHARGED THEORY; DISM.
INDICTMENT
No. CR 12-00887 EJD                                                9

1    A defendant's essential right to be prosecuted on the facts presented to the grand jury and

2    alleged in the indictment was addressed at length by the Supreme Court in Russell v. United States,

3    369 U.S. 749, 768 (1962).  In that case, the defendant was indicted for refusing to answer a question

4    at a congressional hearing, but the indictment did not identify the question he failed to answer.  The

5    Supreme Court held that the indictment's failure to identify the pertinent facts impermissibly

6    allowed the government to change its theory at will:

7        At every stage in the ensuing criminal proceeding Price was met with a different theory, or
         by no theory at all, as to what the topic had been. Far from informing Price of the nature of
8        the accusation against him, the indictment instead left the prosecution free to roam at large-to
         shift its theory of criminality so as to take advantage of each passing vicissitude of the trial
9        and appeal.

10   Id.

11       Here, the indictment contains only one theory of liability – that the three named defendants

12   extorted Ms. Hernandez by making repeated demands for money while refusing to provide

13   information regarding her children.  See Indictment at 2-5.  Mr. Salinas has vigorously disputed this

14   theory on both legal and factual grounds, and the government's implied abandonment of the indicted

15   theory in favor of the uncharged "usurious loan" theory is grounds for dismissal of the indictment,

16   because he is not being prosecuted on the basis of facts presented to the grand jury.  Instead, as in

17   Russell, the government is now "roam[ing] at large-to shift its theory of criminality so as to take

18   advantage of each passing vicissitude."   See Russell, 369 U.S. at 768.  Moreover, unless the

19   indictment is dismissed and a new indictment is obtained, Mr. Salinas will not be sufficiently

20   apprised regarding the theory that the government intends to pursue at trial, and he will not be able

21   to plead once in jeopardy as to any uncharged theory in the event of a mistrial or dismissal.   See

22   Bernhardt, 840 F.2d at 1445.

23       One district court in the Eastern District of California recently dismissed counts in an

24   indictment after noting similar conduct by the government in continually shifting its theory of

25   prosecution.  See United States v. Jack, 2010 WL 4718613 (E.D. Cal. 2010).  In Jack, the defendants

26

1    were charged with, *inter alia*, conspiracy to overthrow the government in Laos.  In a pretrial motion,

2    the defendants argued that several of the counts should be dismissed because the indictment failed to

3    state an offense under the charged statutes.  As relevant here, the defendants moved to dismiss Count

4    Two, which alleged a violation of the Neutrality Act (the "Act"), 18 U.S.C. § 960, on the theory that

5    the defendants intended to carry on "a military expedition or enterprise . . . from the United States."

6    Id. at *5.  In reviewing the government's shifting theories, the district court found that "the nature of

7    the military enterprise or expedition alleged is unclear" because of "the government's changing

8    depiction of the leadership and composition of the alleged military enterprise" in successive filings.

9    Id. at 8.  The district court granted the motion to dismiss Count Two, finding that the indictment

10   failed "to put each defendant on notice of the nature of charges against him in order to allow him to

11   prepare a defense or to ensure he is being prosecuted on the basis of the facts presented to the grand

12   jury."  Id. at *7.

13         The Jack court also found the indictment factually insufficient, because the indictment

14   "fail[ed] to apprise each defendant of the specific conduct he engaged in that allegedly violates the

15   Act."  Id.  As a result, the court found that "the individual defendants are unable to either prepare a

16   defense or ensure that they are being prosecuted on the basis of the facts presented to the grand

17   jury."  Id. at 9.  While not the subject of the motion, the court noted that it was "troubled that at each

18   appearance before it, the government has time after time asserted a different hierarchy of the military

19   enterprise and the evolving theory of its operation."  Id. at 8 n.10.

20         Here, as in Jack, the government's continually shifting theories have only added to the

21   ambiguity regarding the charged theory and the relevant facts.  Id. at 9 (noting "ambiguity" arising

22   from deficient indictment and government's shifting theories).  Additionally, as a result of the

23   government's extra-judicial efforts to amend the deficient indictment, Mr. Salinas is now facing trial

24   on the basis of new facts that were not presented to the grand jury.  See id.

25

26

1    The government's abandonment of a prosecution theory set forth in the indictment is grounds

2    for dismissal of the indictment prior to trial under Fed. R. Crim. P. 12(b)(2) and (b)(3).  United

3    States v. Volpe, 863 F.Supp. 1120 (N.D. Cal. 1994), vacated on stipulation of the parties at 943

4    F.Supp 1211 (N.D. Cal. 1996) (citing Bernhardt).  In Volpe, for example, the district court found

5    that "the government has impermissibly changed the factual basis for the conclusion already reached

6    by the grand jury." Id. at 1125.  Accordingly, because there was "no assurance that the grand jury

7    indicted on the same facts on which Volpe is now being prosecuted," and because "[a] bill of

8    particulars cannot cure this problem," the court dismissed the indictment.[3]

9    Moreover, if the case goes to trial without dismissal and reindictment, Mr. Salinas will not be

10   able to plead once in jeopardy as to any uncharged theory.  As the Tenth Circuit has noted, "once the

11   government abandons a theory by failing to present any evidence related to the theory, the

12   government cannot seek to retry a defendant on the abandoned theory."  United States v. Hoeffner,

13   626 F.3d 857, 869 (5th Cir. 2010).  However, this rationale would not apply to an uncharged theory,

14   because Mr. Salinas would not be able to establish that the theory had been previously alleged before

15   the grand jury.  Cf. United States v. Gray, 705 F. Supp. 1224, 1232-33 (E.D. Ky. 1988) ("[After] the

16   prosecution's failure to present a particular [indicted] theory to the jury, the government should not

17   be given a second bite at the apple. . . .  [A]lthough the traditional and Klein theories were

18   technically presented to the jury by the trial court's quotation of a portion of the indictment, these

19   theories were in reality not presented to the jury and a retrial would place [Gray] again in jeopardy

20   and this is expressly prohibited by the Constitution."); United States v. Cavanaugh, 948 F.2d 405,

21   416 (8th Cir. 1991) (abandonment of charged theory in favor of another theory that is later found

22   insufficient to support conviction bars retrial on abandoned theory).

23

24   _____

25   [3] Because Volpe was vacated on stipulation of the parties, Mr. Salinas recognizes that it lacks the persuasive value of an opinion that could have been subjected to appellate review.  However, the facts and analysis are nonetheless instructive here.

26

SALINAS MOT. TO PRECLUDE
UNCHARGED THEORY; DISM.
INDICTMENT

1         The Court should find that the present Indictment has been impliedly abandoned.  Dismissal

2    is the appropriate remedy because the government has severely undermined Mr. Salinas' right to be

3    informed of the charges against him, his right to present a defense, his right to due process, and his

4    right to locate and call witnesses in his own defense, and has placed Mr. Salinas in an impossible

5    position only three months before trial.  He has spent nearly 18 months investigating a particular set

6    of facts alleged in the indictment.  In written briefing, he has identified numerous deficiencies in the

7    government's proof.   In response, the government no longer intends to prosecute Mr. Salinas on the

8    basis of the allegations that he investigated.[4]  The government has significantly altered the nature of

9    the proof that it intends to present by identifying new individuals who were allegedly involved, new

10   financial transactions, and new communications as the basis for its case.

11        Mr. Salinas should not be required to continue preparing for trial based on allegations in an

12   indictment that the government no longer intends to pursue.  Nor should he be required to prepare

13   for trial based on new, unindicted allegations made at this late stage, which have not been presented

14   to a grand jury or set forth in an indictment, and which are vague in the extreme.  Indeed, the

15   government's late-breaking change in theories does not even allow Mr. Salinas sufficient time to file

16   this motion within the time period required by the local rules.  Nor will he have adequate time to

17   prepare or file other pretrial motions regarding the new theories, such as a bill of particulars and a

18   second motion for Rule 15 depositions, if necessary.

19        In the alternative, the Court should enter a pretrial order limiting the government to the

20   allegations set forth in the Indictment, and should strike any witnesses, testimony, documents, or

21   

22       [4] The Court may get a sense of the potential prejudice to Mr. Salinas arising from the
government's tactics by reviewing the government's opposition to Rule 15 depositions in this case.

23   In that briefing, the government relied heavily on the new factual allegations regarding the "usurious
loan" theory to argue against the materiality of the depositions, on grounds that those facts would

24   "place the materiality of the defendants' deposition requests in context."  Gov. Opp. to Rule 15
Depositions at 2.   The government thus sought to obtain the upper hand in the Rule 15 litigation by

25   attempting to force Mr. Salinas to respond to new factual allegations, not present in the indictment,
about which he had only recently received discovery, and which he had only begun to investigate.

26   

SALINAS MOT. TO PRECLUDE
UNCHARGED THEORY; DISM.
INDICTMENT
No. CR 12-00887 EJD                                    13

1    other evidence pertaining to any theory or fact not set forth in the Indictment.

2                                                  **III.**

3                                            **CONCLUSION**

4          For the foregoing reasons, and under the Fifth Amendment, the Court must preclude the

5    government from presenting theories and evidence at trial that have not been presented to the grand

6    jury and are not set forth in the Indictment.  The Court should also dismiss the Indictment on

7    grounds of abandonment by the government and failure to state an offense.

8    Dated:

9
                                                Respectfully submitted,
10
                                                STEVEN KALAR
11                                              Federal Public Defender

12                                                     /s/

13                                              ROBERT CARLIN
                                                Assistant Federal Public Defender
14

15

16

17

18

19

20

21

22

23

24

25

26

SALINAS MOT. TO PRECLUDE
UNCHARGED THEORY; DISM.
INDICTMENT
No. CR 12-00887 EJD                                    14